UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

GERALD McCLAIN, JR.,

Plaintiff,

vs. Case No.:
Hon.

SMITH & NEPHEW, INC.,

Defendant.

_______________________________________/

JUSTIN J. HAKALA (P72996)
SAM BERNSTEIN LAW, PLLC
Attorneys for Plaintiff
31440 Northwestern Hwy, Suite 333
Farmington Hills, MI 48334
(248) 538-3144
Fax: (248) 785-6008
jhakala@sambernstein.com
_______________________________________/

**COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff GERALD McCLAIN, JR., by and through his attorneys, SAM BERNSTEIN LAW, PLLC, by JUSTIN J. HAKALA, and for his cause of action against Defendant, states as follows:

1. This action arises out of two total hip replacement procedures performed on Plaintiff, Gerald McClain, Jr., using Smith and Nephew hip chromium cobalt components that were never approved by the Food and Drug Administration

for use in a total hip arthroplasty, led to Metallosis because of the metal-on-metal contact, and ultimately caused injuries, complications, and the need for revisions of both of Mr. McClain's hip replacements.

2. Plaintiff Gerald McClain, Jr. is domiciled in Oakland County, Michigan.

3. Defendant Smith & Nephew, Inc., is a corporation formed in the state of Tennessee, with its principal place of business in Tennessee.

4. The acts and occurrences that form the basis of this Complaint occurred in the State of Michigan.

5. The amount in controversy in this litigation exceeds the jurisdictional limit of seventy-five thousand ($75,000.00) dollars exclusive of costs, interest, and attorney fees.

6. This Court has subject matter jurisdiction over this action based upon diversity because it was brought by a citizen of the State of Michigan against a corporation domiciled in other States. 28 U.S.C. § 1332.

7. Venue is proper in this jurisdiction because a substantial part of the events or omission giving rise to Plaintiff's injuries and claims took place in this judicial district. 28 U.S.C. § 1391(2).

## MDL ALLEGATIONS

8. The facts related to the design, manufacture, marketing, and sale of the

medical devices at issue in this lawsuit have, in large part, been litigated in MDL No. 2775, *In re: Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Products Liability Litigation.*

9. Approximately 1000 individual lawsuits were litigated in MDL 2775, with the final claims remanded by the transferee court in September of 2024; as a result, this claim must be filed as a stand-alone action in a Court with jurisdiction.

10. Plaintiff incorporates by reference the allegations made in the Master Complaint and Master Amended Consolidated Complaints in MDL 2775 as though fully stated herein.

## FACTUAL ALLEGATIONS

11. Traditional total hip arthroscopy (THA) systems include a cup that fits into the acetabulum, a femoral head that fits inside the acetabular cup, and a femur stem that is placed within the femur.

12. Monoblock total hip systems include components that are designed to work together and modular systems include series of components that can be interchanged based upon the preference of the surgeon and the patient's anatomy.

13. Currently, there are no metal-on-metal total hip replacement systems approved by the FDA for use in the United States, but for many years manufacturers attempted to develop and sell these systems.

14. In the late 1990s, the Birmingham Hip Resurfacing (BHR) system was

introduced, which allowed the femoral head to be trimmed and capped to preserve more of the femoral bone block.

15. The BHR system was approved for use by the FDA.

16. Use of the BHR as a modular component with other metal components, however, was not approved by the FDA.

17. Despite that, Smith and Nephew marketed the BHR system for use with other components in a modular approach.

18. In the 2000's, a series of publications and recalls increasingly called attention to the problems associated with metal-on-metal THA systems.

19. In 2006, the Committee on Safety of Devices (now known as the Devices Expert Advisory Committee) in the United Kingdom noted growing concern about the biological effect that metal wear debris caused by worn hip replacement components has on the body.

20. In 2007 the Austrian Register of Therapeutic goods reported data showing higher than normal replacement rates for DePuy metal-on-metal hips.

21. In 2008, the Expert Advisory Group of the Committee on Safety of Devices in the UK issued a report containing advice on biological effects of metal-on-metal wear debris and requiring additional reporting for metal-on-metal adverse health effects and recommended additional research.

22. A 2011 article documented higher cobalt and chromium metal ion

levels in patients with metal-on-metal THA implants. A. Matthies, et. al., *Retrieval Analysis of 240 Metal-on-Metal Hip Components, Comparing Modular Total Hip Replacement with Hip Resurfacing*, J. BONE & JOINT SURG., 2011;93-B:307-14.

23. In 2012, New Zealand Medicines and Medical Devices Safety Authority issued an alert to surgeons that the Birmingham Hip Modular Head was no long recommended for total hip replacement surgery because "Smith and Nephew, a UK Company, says its Birmingham Hip Modular Head is not performing as well as expected when used in total hip replacement surgery." *See* https://www.medsafe.govt.nz/hot/media/2012/RecalSmithAndNephewBirminghamHipModularHead.asp (last accessed Sep. 29, 2026).

24. In addition, a number of high profile recalls of metal-on-metal hip replacement devices occurred, including the Zimmer Durom (2008), and the DePuy ASR (2010).

25. Biomet and Wright Medical Technology's metal-on-metal hips were similarly phased out as the companies faced litigation.

26. At the same time, Smith and Nephew continued to market its BHR system and attempted to distinguish it from other metal-on-metal systems.

27. Smith and Nephew knew the BHR system was continually used as a component in a THA procedure based upon adverse event reports, interaction with surgeons, device sales, and the frequency of medical device sale representatives in

operating rooms.

28. Smith and Nephew marketed the BHR system to be used in THA procedures as the Birmingham Hip Modular Head (BHMH).

29. This off-label use carried high failure rates similar to those that plagued other metal-on-metal total hip replacement systems throughout the industry.

30. Smith and Nephew sold its BHMH system until at least 2014 and announced in 2015 that it had been phased out in the US due to a decline in sales.

31. Smith and Nephew voluntarily recalled some of its BHMH systems from the market in 2015, stating it was based upon National Joint Registry of England and Wales data identified in post-market surveillance, while quietly withdrawing other BHMH systems from the market.

32. Smith and Nephew never told physicians or patients of the high rates of failure, revision, and metallosis with the BHR used as a component in THA procedures.

33. Smith and Nephew's instructions for use (IFU) and device labeling for the device components did not appropriately warn of the risk of device failure, metallosis, and other complications.

34. Further, Smith and Nephew was unable to obtain approval from the FDA for the BHR cup used in a THA procedure.

35. The BHR premarket approval, which it sought in 2004 and was granted

by the FDA in 2006, did not include a modular component to be used in a THA.

36. Smith and Nephew never amened its premarket approval application to add a modular component.

37. Instead, Smith and Nephew sought approval under the less stringent 510k process for the BHR modular femoral head in 2005, but withdrew the application in 2006 after the FDA sought additional information.

38. Smith and Nephew sought a 510k approval in 2006 (K061243) for modular heads intended to be used as part of a hemi-hip replacement, which was later approved.

39. Smith and Nephew again sought 510k approval for the modular heads' use in THAs (K062189).

40. The FDA again requested additional information, which Smith and Nephew declined to provide.

41. Smith and Nephew withdrew the application, instead electing to continue to sell the product to be used by physicians off label.

**PLAINTIFF'S MEDICAL COURSE**

42. In 2011, Gerald McClain, Jr. had a longstanding history of pain in his right and left hip, as well as a history of slipped capital femoral epiphysis in his right hip, which required surgery when he was younger.

43. He developed osteoarthritis in his right hip and ultimately elected to

have a total hip arthroplasty performed by Dr. Philip Schmitt at Huron Valley-Sinai Hospital in Commerce, Michigan.

44. On January 18, 2011, Dr. Schmitt performed a right total hip arthroplasty and removal of five pins that had been retained from the prior surgery.

45. Dr. Schmitt used a Smith & Nephew size 54 Birmingham acetabular cup, pair with a size 48 femoral head and size 14 Synergy Stem.

46. On March 1, 2022, Mr. McClain underwent a total hip arthroplasty on the left side performed by Dr. Schmitt at Huron Valley-Sinai Grace Hospital.

47. Dr. Schmitt again utilized the same hybrid approach, with a Synergy stem, modular femoral head, and Birmingham acetabular cup.

48. Mr. McClain suffered a series of seemingly unrelated leg issues over the following years.

49. He saw Dr. Schmitt for right quadriceps pain in 2012 and 2013.

50. He saw Dr. Schmitt for right-sided groin pain in 2015 and 2019.

51. He underwent physical therapy ordered by Dr. Schmitt in 2019.

52. In November of 2019, he underwent a fluoroscopic guided psoas tendon steroid injection.

53. In 2020 he underwent another round of physical therapy for right psoas tendonitis.

54. In May of 2021, his primary care physician ordered a course of physical

therapy for pain in Mr. McClain's left thigh.

55. In September of 2021, Dr. Schitt ordered a Medrol Dosepak to treat left hamstring pain, and in November of that year Dr. Schmitt recommended an epidural injection.

56. In July of 2023, Mr. McClain underwent a percutaneous tenotomy of the left hamstring under ultrasound guidance, followed by another course of physical therapy.

57. On May 8, 2026, Mr. McClain was seen by Dr. David Hamilton, who ordered an MRI, bone scan, and blood test.

58. A blood test was collected on June 11, 2026 and reported on June 19, 2026, and it revealed cobalt levels of 25.0 ug/L (reference range: 0.5-3.9 ug/L).

59. Chromium levels were 12.2 ug/L (reference range 0.1-2.1).

60. The MRI revealed soft tissue changes as well as pseudotumor present near his hamstrings.

61. Based upon a metallosis diagnosis, the presence of pseudotumor, and soft tissue changes, Mr. McClain underwent a revision of both his right and left hip arthroplasties on June 25, 2026.

62. On July 11, 2026, he presented to the emergency department shaking and with signs of infection.

63. He was treated for sepsis, admitted to the Huron Valley Sinai-Grace,

and underwent a revision of his right hip arthroplasty.

## COUNT I – BREACH OF IMPLIED WARRANTY

64. Plaintiff hereby adopts and incorporates by reference the averments in paragraphs 1 – 63 as though fully re-stated herein.

65. Defendant designed, manufactured, marketed, distributed, and sold the hip replacement components utilized in Mr. McClain's hip replacement procedures.

66. The components were defective at the time they left Defendant's control, as follows:

a. Were prone to metal-on-metal wear, and formation of metal debris and metal ions;
b. Had an unreasonable rate of failure and revision;
c. Other ways to be identified in discovery;

67. The defective condition of the medical devices was a direct and proximate cause of Plaintiff's injuries and damages when they wore prematurely, left debris from metal-on-metal wear, created metal ions that aggravated tissue locally, lead to systemic symptoms and problems, and ultimately lead to the failure of the implants and need for revision surgery.

68. As a result of Defendant's manufacture and sale of defective products, Plaintiff suffered injuries and damages, past, present, and future, including but not

limited to:

a. Metallosis and a variety of soft tissue related injuries;
b. Hospitalization, related inpatient medical treatment, and revision surgeries;
c. Physical pain and suffering;
d. Mental anguish;
e. Fright and shock;
f. Denial of social pleasure and enjoyments;
g. Humiliation and embarrassment;
h. Disability and disfigurement;
i. Medical expenses;
j. Loss of earnings and/or earning capacity; and
k. Other injuries and damages to be identified during discovery.

Wherefore Plaintiff requests that this Honorable Court award damages in an amount in excess of the jurisdictional limit of $75,000.00, together with costs, fees, interest, and all other damages to which Plaintiffs are found to be entitled.

**COUNT II – FAILURE TO WARN**

69. Plaintiff hereby adopts and incorporates by reference the averments in paragraphs 1 – 63 as though fully re-stated herein.

70. Defendant had a duty to warn physicians and their patients, including

Plaintiff, of any known or reasonably knowable risks associated with the metal-on-metal total hip replacement components.

71. Defendant breached its duties in the following ways:

a. It failed to provide any warning regarding the risk of metal-on-metal debris, metal ions, or metallosis with its metal-on-metal hip components;

b. It failed to warn of the risk of premature device failure, or the need for replacement;

c. It failed to warn physicians that BHR components were not FDA approved for use in total hip arthroplasties;

d. It failed to warn physicians of the reason that BHR systems were not FDA approved;

e. It failed to undertake any post-sale warning to Mr. McClain and other similarly situated patients that the BHR components used in THAs off label carried a high risk of revision due to metallosis and its associated problems;

f. based upon these issues to Plaintiff or his physicians.

72. Had Plaintiff been warned of these risks, he would have elected to have a total hip replacement procedure performed with a traditional polyethylene liner.

73. As a direct and proximate result of Defendant's failure to warn, Plaintiff

suffered injuries and damages, past, present, and future, including but not limited to:

a. Metallosis and a variety of soft tissue related injuries;
b. Hospitalization, related inpatient medical treatment, and revision surgeries;
c. Physical pain and suffering;
d. Mental anguish;
e. Fright and shock;
f. Denial of social pleasure and enjoyments;
g. Humiliation and embarrassment;
h. Disability and disfigurement;
i. Medical expenses;
j. Loss of earnings and/or earning capacity; and
k. Other injuries and damages to be identified during discovery.

Wherefore Plaintiff requests that this Honorable Court award damages in an amount in excess of the jurisdictional limit of $75,000.00, together with costs, fees, interest, and all other damages to which Plaintiffs are found to be entitled.

**COUNT III – POST-SALE DUTY TO WARN**

74. Plaintiff hereby adopts and incorporates by reference the averments in paragraphs 1 – 63 as though fully re-stated herein.

75. Defendant had a post-sale duty to warn physicians and their patients,

including Plaintiff, of risks associated with the metal-on-metal total hip replacement components discovered after the sale and surgical implantation in Defendant's market surveillance.

76. Defendant breached its duties in the following ways:

a. It failed to provide any warning regarding the risk of metal-on-metal debris, metal ions, or metallosis with its metal-on-metal hip components;

b. It failed to undertake any post-sale warning to Mr. McClain and other similarly situated patients that the BHR components used in THAs off label carried a high risk of revision due to metallosis and its associated problems;

c. It failed to warn of the risk of premature device failure, or the need for replacement;

d. It failed to recommend periodic testing for metallosis that could detect signs of metal-on-metal hip component problems before they became more severe;

e. based upon these issues to Plaintiff or his physicians.

77. Had Plaintiff been so warned, he would have undertaken routine surveillance with testing for metallosis and would have undergone revision procedures before the complications worsened, diminished the quality of his life;

and led to other complications.

78. As a direct and proximate result of Defendant's failure to warn, Plaintiff suffered injuries and damages, past, present, and future, including but not limited to:

a. Metallosis and a variety of soft tissue related injuries;
b. Hospitalization, related inpatient medical treatment, and revision surgeries;
c. Physical pain and suffering;
d. Mental anguish;
e. Fright and shock;
f. Denial of social pleasure and enjoyments;
g. Humiliation and embarrassment;
h. Disability and disfigurement;
i. Medical expenses;
j. Loss of earnings and/or earning capacity; and
k. Other injuries and damages to be identified during discovery.

Wherefore Plaintiff requests that this Honorable Court award damages in an amount in excess of the jurisdictional limit of $75,000.00, together with costs, fees, interest, and all other damages to which Plaintiffs are found to be entitled.

## COUNT IV – NEGLIGENCE

79. Plaintiff hereby adopts and incorporates by reference the averments in

paragraphs 1 – 63 as though fully re-stated herein.

80. Defendant had a duty to exercise reasonable care in the design, manufacture, testing, marketing and sale of the hip replacement components used in Mr. McClain's surgeries.

81. Defendant breached its duty of care in one or more of the following ways:

a. Failing to design the products to avoid unreasonable risk of harm to patients in which they were implanted;
b. Failing to design hip replacement components to avoid metal-on-metal contact, and avoid creation of metal debris and metal ions;
c. Failure to include a liner to avoid metal-on-metal contact;
d. Failure to conduct adequate post-manufacture surveillance;
e. Failure to provide truthful and accurate statements to medical providers that would be utilizing the hip components;
f. Failure to design, write, and distribute accurate instructions for use of their devices that accurately describe the risk of using BHR components as part of a THA system or indicated that they were not designed to be used as such;
g. Other acts and omissions to be identified during discovery.

82. As a result of Defendant's negligence, the hip replacement components

wore prematurely, left debris from metal-on-metal wear, created metal ions that aggravated tissue locally and lead to systemic symptoms and problems, and ultimately lead to the failure of the implants and need for revision surgery.

83. As a result of Defendant's negligence Plaintiff suffered injuries and damages, past, present, and future, including but not limited to:

a. Metallosis and a variety of soft tissue related injuries;
b. Hospitalization, related inpatient medical treatment, and revision surgeries;
c. Physical pain and suffering;
d. Mental anguish;
e. Fright and shock;
f. Denial of social pleasure and enjoyments;
g. Humiliation and embarrassment;
h. Disability and disfigurement;
i. Medical expenses;
j. Loss of earnings and/or earning capacity; and
k. Other injuries and damages to be identified during discovery.

\Wherefore Plaintiff requests that this Honorable Court award damages in an amount in excess of the jurisdictional limit of $75,000.00, together with costs, fees, interest, and all other damages to which Plaintiffs are found to be entitled.

## COUNT V – CONSUMER PROTECTION ACT

84. Plaintiff hereby adopts and incorporates by reference the averments in paragraphs 1 through 63 as though fully re-stated herein.

85. Michigan Consumer Protection Act prohibits representing that goods for sale are of good quality and fit for consumption, when in fact they are not. MCL 445.903.

86. Defendants marketed and sold the BHR components and fit for use in THA procedures, when they were neither FDA approved for THAs, nor were they safe for use in those procedures.

87. Defendants marketing and sale of BHR components violated the Michigan Consumer Protection Act in the following ways:

a. the BHR components were not FDA approved for use in THAs;
b. The BHR components were not safe for use in THA procedures;
c. The BHR components were prone to metal debris and metal ion production in THA procedures;
d. Other ways to be identified during discovery.

88. As a result of these violations of statute, Plaintiff underwent surgery with metal-on-metal components, which wore prematurely, left debris from metal-on-metal wear, created metal ions that aggravated tissue locally and lead to systemic symptoms and problems, and ultimately lead to the failure of the implants and need

for revision surgery.

89. As a result of Defendant's breach of the Michigan Consumer Protection Act, Plaintiff suffered injuries and damages, past, present, and future, including but not limited to:

a. Metallosis and a variety of soft tissue related injuries;
b. Hospitalization, related inpatient medical treatment, and revision surgeries;
c. Physical pain and suffering;
d. Mental anguish;
e. Fright and shock;
f. Denial of social pleasure and enjoyments;
g. Humiliation and embarrassment;
h. Disability and disfigurement;
i. Medical expenses;
j. Loss of earnings and/or earning capacity; and
k. Other injuries and damages to be identified during discovery.

Wherefore Plaintiff request that this Honorable Court award damages in an amount in excess of the jurisdictional limit of $25,000.00, together with costs, fees, interest, and all other damages to which Plaintiffs are found to be entitled.

## COUNT VI – NEGLIGENT MISREPRESENTATION

90. Plaintiff hereby adopts and incorporates by reference the averments in paragraphs 1 – 63 as though fully re-stated herein.

91. Defendant had a duty to accurately and truthfully represent to the FDA, medical community, patients, and the public, the facts and efficacy of the BHR and, in particular, facts about the safety and efficacy of the BHR when used as components of a total hip replacement.

92. Defendant breached its duty of care in one or more of the following ways:

a. Failing to report accurate information about the cause of BHR failures when used a component of THA;
b. Failing to report the accurate device failure rate;
c. Failing to report the occurrence and rate of metallosis;
d. Other acts and omissions to be identified during discovery.

93. Mr. McClain, his physicians, and the FDA relied upon the statements made to Defendant.

94. As a result of Defendant's negligence, the BHR continued to be used in THAs, Mr. McClain underwent a THA with BHR components, the hip replacement components wore prematurely, left debris from metal-on-metal wear, created metal ions that aggravated tissue locally and lead to systemic symptoms and problems, and ultimately lead to the failure of the implants and need for revision surgery.

95. As a result of Defendant's negligent misrepresentations, Plaintiff suffered injuries and damages, past, present, and future, including but not limited to:

a. Metallosis and a variety of soft tissue related injuries;
b. Hospitalization, related inpatient medical treatment, and revision surgeries;
c. Physical pain and suffering;
d. Mental anguish;
e. Fright and shock;
f. Denial of social pleasure and enjoyments;
g. Humiliation and embarrassment;
h. Disability and disfigurement;
i. Medical expenses;
j. Loss of earnings and/or earning capacity; and
k. Other injuries and damages to be identified during discovery.

\Wherefore Plaintiff requests that this Honorable Court award damages in an amount in excess of the jurisdictional limit of $75,000.00, together with costs, fees, interest, and all other damages to which Plaintiffs are found to be entitled.

**COUNT VII – BREACH OF EXPRESS WARRANTY**

96. Plaintiff hereby adopts and incorporates by reference the averments in paragraphs 1 – 63 as though fully re-stated herein.

97. Defendant had a duty to be accurate and truthful in its representations about the BHR components and, in particular, the safety and efficacy of the BHR when used as components of a total hip replacement.

98. Defendant breached its duty of care in one or more of the following ways:

a. That the BHR products were safe, fit, and effective for use, and were in fact, superior to a full hip replacement for patients;

b. That the BHR products were "a conservative approach to hip arthroplasty" that was safer and more effective than a total hip arthroplasty;

c. That the features of the BHR products included:

i. Less bone resection than conventional total hip arthroplasty;

ii. The success rate was supported by the availability of global, long-term clinical outcomes data

iii. That the BHR featured "[f]unctionally optimized metallurgy and design."

d. That the BHR products were safer and more effective than other available metal hip replacements on the market;

e. That the BHR products post-market were not found to have any increased risks of device failures or complications, and enjoyed

a "survival" rate as high as 94.4 percent over ten years;

f. That the BHR was safe.

g. Other acts and omissions to be identified during discovery.

99. Mr. McClain, his physicians, and the FDA relied upon the statements made to Defendant.

100. As a result of Defendant's representations and warranties, the BHR continued to be used in THAs, Mr. McClain underwent a THA with BHR components, the hip replacement components wore prematurely, left debris from metal-on-metal wear, created metal ions that aggravated tissue locally and lead to systemic symptoms and problems, and ultimately lead to the failure of the implants and need for revision surgery.

101. As a result of Defendant's representations and warranties, Plaintiff suffered injuries and damages, past, present, and future, including but not limited to:

a. Metallosis and a variety of soft tissue related injuries;

b. Hospitalization, related inpatient medical treatment, and revision surgeries;

c. Physical pain and suffering;

d. Mental anguish;

e. Fright and shock;

f. Denial of social pleasure and enjoyments;

g. Humiliation and embarrassment;

h. Disability and disfigurement;

i. Medical expenses;

j. Loss of earnings and/or earning capacity; and

k. Other injuries and damages to be identified during discovery.

\Wherefore Plaintiff requests that this Honorable Court award damages in an amount in excess of the jurisdictional limit of $75,000.00, together with costs, fees, interest, and all other damages to which Plaintiffs are found to be entitled.

Respectfully submitted,

THE SAM BERNSTEIN LAW FIRM

By: s/Justin J. Hakala
JUSTIN J. HAKALA (P72996)
31440 Northwestern Hwy, Suite 333
Farmington Hills, Michigan 48334
Direct Dial: (248) 538-3144
jhakala@sambernstein.com

Date: October 6, 2026

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

GERALD McCLAIN, JR.,

Plaintiff,

vs. Case No.:
Hon.

SMITH & NEPHEW, INC.,

Defendant.

_______________________________________/

JUSTIN J. HAKALA (P72996)
SAM BERNSTEIN LAW, PLLC
Attorneys for Plaintiff
31440 Northwestern Hwy, Suite 333
Farmington Hills, MI 48334
(248) 538-3144
Fax: (248) 785-6008
jhakala@sambernstein.com
_______________________________________/

**JURY DEMAND**

NOW COMES Plaintiff GERALD McCLAIN, JR., by and through his attorneys, SAM BERNSTEIN LAW, PLLC, by JUSTIN J. HAKALA, and hereby respectfully request a trial by jury in the above-entitled cause of action.

Respectfully submitted,

THE SAM BERNSTEIN LAW FIRM

By: /s/Justin J. Hakala_______
JUSTIN J. HAKALA (P72996)

31440 Northwestern Hwy, Suite 333
Farmington Hills, Michigan 48334
Direct Dial: (248) 538-3144
jhakala@sambernstein.com

Date: October 6, 2026